V. ANDREW CASS
Nevada Bar No. 005246
KRISTIN E. MEREDITH
Nevada Bar No. 11655
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
702.893.3383
FAX: 702.893.3789
E-Mail: cass@lbbslaw.com
E-Mail: meredith@lbbslaw.com
Attorneys for State Farm Mutual Automobile
Insurance Company ("State Farm")

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RICKEY WARD, <br><br> Plaintiff, <br><br> vs. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, DOES I through X, inclusive and ROE CORPORATIONS I through X, inclusive, <br><br> Defendant. | CASE NO.: 2:12-cv-00835-APG-VCF <br><br> **ORDER GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR "BAD FAITH," BREACH OF NEVADA UNFAIR INSURANCE CLAIMS PRACTICES ACT, AND PUNITIVE DAMAGES** |

Before the Court is defendant State Farm's Motion for Summary Judgment on Plaintiff's Claims for "Bad Faith," Breach of Nevada Unfair Insurance Claims Practices Act, and Punitive Damages [Dkt. #28]. State Farm filed its Motion on December 19, 2012. Pursuant to LR 7-2, Plaintiff was required to file an Opposition to the Motion by January 3, 2013. To date, no Opposition has been filed. Pursuant to LR 7-2(d), the failure to file an opposition to a motion may be deemed consent to the granting of the motion. For that reason, and for the reasons set forth below, the Motion is granted.

4815-4631-4260.1

**FINDINGS OF FACT**

Pursuant to F.R.C.P. 56(c), the following undisputed material facts support the granting of State Farm's motion.

1. In approximately 1999 or 2000, Ward's right femur was shattered by a gunshot. Screws were inserted in Ward's hip and knee, along with a rod from his knee to hip. Ward was hospitalized for two months at that time. As a result of the gunshot injury, Ward was declared totally disabled and unable to work, and has received social security disability benefits as a result. In the six months prior to August, 2010 (the date of the accident involved in this case), Ward made multiple complaints of back and hip pain to Dr. Wichman, his primary care physician, whose recorded diagnosis was chronic hip and low back pain.

2. On August 7, 2010, Mr. Ward was a passenger in a 1998 Ford Mustang which was traveling westbound on Charleston Boulevard and attempting to make a left turn. James Lester, driving a 1996 Dodge pickup, failed to decrease his speed and collided with the right rear of the Mustang (the "Accident"). Mr. Lester, the responsible driver, was insured by State Farm with liability limits of $25,000 for "each person," up to a total of $50,000 for "each occurrence." State Farm tendered the policy limits of $25,000 to Mr. Ward in August, 2009.

3. At the time of the Accident, the Mustang in which Mr. Ward was a passenger likewise was insured under a State Farm auto policy, Policy No. 58 1567-B05-28 (hereafter the "Policy"). That Policy included medical payments coverage of $5,000 and UM/UIM limits of $100,000/$300,000. Ward, as a passenger in the Mustang, qualified as an inured under the Policy.

4. Ward claimed to have sustained neck pain, low back pain and right hip pain as a result of the Accident. Ward initially treated with Peter Catlett D.C. from August 11, 2009 to September 30, 2009. After a 2-1/2 month gap in treatment, Mr. Ward returned to Dr. Catlett and treated with him through July 29, 2011.

5. On August 24, 2010, Ward was evaluated by Dr. Raimundo Leon, a pain management physician who recommended continued conservative management.

6.      On October 7, 2010, Ward's counsel sent State Farm medical bills and limited records from: (1) University Medical Center ($11,690); (2) Desert Radiologists ($1,119); (3) Thomas Shang, M.D. ($300); and (4) Peter Catlett, D.C. ($1,617). Counsel requested medical payments benefits under the Policy. On October 19, 2010, State Farm paid the medical payment limits of $5,000.

7.      On December 10, 2010, Ward's counsel provided the names of additional medical providers, claimed Ward's medical specials were now $20,517.79, and demanded settlement of Ward's UIM claim. State Farm timely evaluated the claim, applied the applicable offsets to the claim value, and offered $5,000 to settle Ward's claim.

8.      On January 11, 2011, Ward sought pain management from Dr. Alain Coppel, who recommended lumbar facet joint injections, which were performed on February 4, 2011 and again on September 2, 2011.

9.      On March 14, 2013, Ward's counsel provided additional records and bills and demanded the UIM policy limits of $100,000. State Farm timely evaluated the additional records, applied the applicable offsets to the claim value, and offered $20,000 to settle Ward's claim. On May 3, 2011 Ward's counsel rejected the offer and again demanded the policy limits.

10.     On May 13, 2011, State Farm increased its offer to $25,000 based on new information which Ward's counsel had provided. State Farm indicated it would consider additional documentation and requested that any further submission include Ward's prior medical records.

11.     On May 25, 2011, Ward's counsel rejected the $25,000 offer and enclosed a medical authorization for State Farm to collect Ward's prior medical records. On May 26, 2013, State Farm requested a list of Ward's prior medical providers. Upon receipt, State Farm ordered records from Ward's prior medical providers.

12.     On October 25, 2011, and December 19, 2011, Ward's counsel sent additional medical bills and records to State Farm, asserting Ward's medical specials had increased (to $56,931.70 in December) and again demanding the policy limits. State Farm timely evaluated the additional records, as well as the records obtained from UMC Primary Care, which included Ward's treatment for "chronic" low back pain and hip pain at severity levels of 7-9 out of 10 in the

1. months immediately preceding the Accident. State Farm noted that at least half the medical specials were related to low back and hip pain, symptoms which pre-dated the accident, and that Ward's post-accident pain levels were the same or less than those reported prior to the Accident. Giving partial consideration to past pain and suffering related to the hip and back, State Farm evaluated the claim to be worth $75,000 to $80,000, applied the applicable offsets, and offered Ward $45,000 to settle his claim. State Farm requested that Ward's counsel contact State Farm to discuss Ward's injuries and treatment.

13. On April 5, 2012, Ward filed suit against State Farm. On June 19, 2012, State Farm authorized an impasse payment to Ward of $45,000, which was mailed to Ward's counsel on July 2, 2012.

14. During the pendency of this litigation, State Farm received and evaluated Ward's initial disclosures (including records of Ward's ongoing medical treatment), Ward's discovery responses, Ward's deposition transcript, and surveillance video of Mr. Ward. State Farm also retained Joseph Schifini, MD to perform a medical examination of Ward and considered his report and addendums thereto.

## LEGAL DETERMINATIONS

Pursuant to F.R.C.P. 56(c), the following are the legal determinations supporting the granting of State Farm's motion.

1. Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

2. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 1986); Fed. R. Civ. P. 56(a). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary

judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

3. Pursuant to Local Rule 7-2(d), the failure to file an opposition to a motion may be deemed consent to the granting of that motion.

4. Under Nevada law, an insured must establish the following elements to be legally entitled to UIM policy proceeds: (1) fault on the part of the uninsured/underinsured motorist; and (2) the extent of damages caused by the uninsured/underinsured motorist. *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993).

5. Under Nevada law, an insurer acts in bad faith when it knows or recklessly disregards the fact that there is no reasonable basis for disputing coverage. *Pioneer Chlor Alkali Co., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994). The Supreme Court of Nevada "has defined bad faith as 'an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy.'" *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 308, 212 P.3d 318, 324 (2009) (quoting *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 605, 729 P.2d 1352, 1354–55 (1986)).

6. "When there is a genuine dispute regarding an insurer's legal obligations, the district court can determine [as a question of law] if the insurer's actions were reasonable." *Id.* at 317, 212 P.3d at 329.

7. A reasonable dispute between an insured and an insurer over the amount of policy benefits to be paid cannot, as a matter of law, support a claim for bad faith.

8. State Farm and Ward disagree as to the reasonable value of Ward's claim. Considering Ward's injury, medical specials, and prior medical conditions, State Farm's valuation of Ward's injuries was not unreasonable.

9. Ward has failed to present any evidence to support a finding that State Farm (1) acted unreasonably, (2) knew or recklessly disregarded that there was no reasonable basis for its conduct, or (3) lacked a reasonable basis for its evaluation of the claim.

10. N.R.S. 686A.310 lists specific acts which, if proven to have occurred and proven to have caused damages, can form the basis for liability to the insured. Here, Ward has not met his burden of establishing any facts or inferences from which a jury could conclude that State Farm's conduct violated any provision of this statute.

11. Ward cannot recover punitive damages as a matter of law because Ward's claims for bad faith and violation of NRS 686A.310 have been adjudicated in favor of State Farm.

12. There are no facts or inferences from facts which would support a jury finding by clear and convincing evidence that State Farm engaged in any conduct which would support the imposition of punitive damages.

Based on the foregoing, the Court has determined that there are no genuine issues as to any material fact and that State Farm is entitled to judgment as a matter of law on Plaintiff's second claim for relief (for Violations of the Unfair Claims Practices Act) and Plaintiff's third claim (for relief for Breach of the Covenant of Good Faith and Fair Dealing). Plaintiff's claim for punitive damages is moot and therefore dismissed.

Therefore, judgment is entered in favor of State Farm on Plaintiff's second cause of action (asserting Violation of the Nevada Unfair Claims Practices Act) and Plaintiff's third cause of action (asserting Breach of the Covenant of Good Faith and Fair Dealing), and those claims are dismissed with prejudice. Similarly, Plaintiff's demand for punitive damages is dismissed with prejudice.

DATED this 8th day of July.

_____
UNITED STATES DISTRICT JUDGE